1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIELLE ROMO,

                              Plaintiff,

              v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

                              Defendant.

Case No. C14-419-BJR-BAT

**REPORT AND
RECOMMENDATION**

14      Danielle Romo appeals the denial of her Supplemental Security Income and Disability

15 Insurance Benefits applications, seeking remand for an award of benefits.  She contends the ALJ

16 erred by (1) improperly discounting the credibility of her testimony, (2) erroneously evaluating

17 the medical evidence, (3) failing to discuss the lay witness statement of Social Security

18 interviewer L. Fry, and (4) basing his step five finding on an incomplete residual functional

19 capacity ("RFC") assessment.  Dkt. 16 at 1-2.  Ms. Romo further argues that additional evidence

20 submitted to the Appeals Council supports reversal.  *Id.*  As discussed below, the Court finds that

21 the ALJ erred in evaluating some of the medical evidence and in failing to discuss the lay

22 witness statement.  Therefore, the ALJ's RFC and step five findings are not supported by

23 substantial evidence, and this case should be **REVERSED** and **REMANDED** for further

REPORT AND RECOMMENDATION - 1

1 administrative proceedings.

2 **BACKGROUND**

3 Following a hearing, the ALJ issued a final decision finding that since Ms. Romo's

4 alleged disability onset date of April 1, 2009, she was not disabled.  Tr. 11-21.  Utilizing the

5 five-step disability evaluation process, the ALJ found that cognitive disorder, depressive

6 disorder, anxiety disorder, degenerative disc disease of the cervical spine, osteoarthritis of the

7 left knee, and obesity were severe impairments that did not meet or equal the requirements of a

8 listed impairment.  Tr. 13; *see* 20 C.F.R. §§ 404.1520, 416.920; 20 C.F.R. Pt. 404, Subpt. P,

9 App. 1.  The ALJ further found that asthma was a medically determinable impairment but did not

10 affect Ms. Romo's ability to perform basic work activities and thus was nonsevere.  Tr. 14.

11 The ALJ found that Ms. Romo had the RFC to perform light work as defined in 20

12 C.F.R. §§ 404.1567(b) and 416.967(b), except that she is limited to simple repetitive tasks and

13 occasional contact with supervisors and co-workers, and precluded from contact with the general

14 public.  Tr. 16.  Based on this RFC and the testimony of a vocational expert, the ALJ found Ms.

15 Romo could perform jobs existing in significant numbers in the national economy.  Tr. 20-21.

16 Therefore, the ALJ found Ms. Romo not disabled.  Tr. 21.

17 **DISCUSSION**

18 **A.      The ALJ's evaluation of Ms. Romo's testimony**

19 The ALJ gave at least two valid reasons to discount Ms. Romo's testimony regarding the

20 severity of her symptoms.  First, the ALJ found Ms. Romo made inconsistent and untenable

21 statements regarding her drug use.  Tr. 17.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

22 2002) (lack of candor regarding drug use supports ALJ's negative conclusions about claimant's

23 veracity).  Substantial evidence supports this finding.  On March 9, 2011, Ms. Romo told a

REPORT AND RECOMMENDATION - 2

mental health provider that she did not want to take a drug test because she would test positive for marijuana, not because she used it but because her sister smoked it in the car.  Tr. 17, 434.  The ALJ found this explanation "simply not credible."  Tr. 17.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (in making credibility determination, ALJ may consider "ordinary techniques of credibility evaluation, such as . . . testimony by the claimant that appears less than candid").  And just a week later, Ms. Romo tested positive for cocaine, despite claims that she had not used that drug since 2008.  *See* Tr. 17, 444, 584, 595.  Ms. Romo contends the ALJ's finding is not a convincing reason to reject all of her testimony, noting that a drug test in May 2011 was negative for all illicit substances.  *See* Tr. 594.  But the later drug test does not invalidate the ALJ's reliance on the earlier positive result.

Second, the ALJ found Ms. Romo engaged in drug-seeking behavior.  Tr. 17.  *See Massey v. Comm'r Soc. Sec. Admin.*, 400 Fed. Appx. 192, 194 (9th Cir. 2010) (ALJ's interpretation that claimant engaged in drug-seeking behavior is a clear and convincing reason for disregarding his or her testimony).  Substantial evidence supports this finding.  On January 20, 2011, Rebecca Sellers, D.O., noted that Ms. Romo became agitated when told that Dr. Sellers would not prescribe more pain medication.  Tr. 17, 571.  Dr. Sellers also noted, "She has been obtaining narcotics for various issues (cough, neck pain) from multiple providers which furthers my discomfort to prescribe narcotic today."  Tr. 574.  In addition, on March 18, 2011, Tania Martinez-Lemke, M.D., declined to prescribe opiates, noting, "Previously [prescribed] opiates by outside providers, has been to Silverlake clinic multiple times in the last 6 [months], at which time [she was prescribed] hydrocodone syrup for bronchitis or Percocet for neck pain [which is] concerning for drug seeking behavior."  Tr. 583.  Ms. Romo nevertheless asserts it was unreasonable for the ALJ to cite her agitation at the January 10, 2011 appointment with Dr.

Sellers because Dr. Sellers noted she "seemed confused on details," was a "tangential historian," and thought that Dr. Sellers was a different doctor whom she had seen previously.  *See* Tr. 571, 574.  But Ms. Romo does not establish that the ALJ's reading of her agitation was an unreasonable interpretation of the record, particularly given Ms. Romo's history of obtaining narcotics from different medical providers.  As such, she fails to show error.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Because the ALJ gave at least two clear and convincing reasons, supported by substantial evidence, to discount Ms. Romo's credibility, the ALJ's credibility determination should be affirmed even if the other reasons Ms. Romo challenges are invalid.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where the ALJ provides other reasons that are supported by substantial evidence).

**B.  The ALJ's evaluation of the medical evidence**

*1.  Kin L. Lui, M.D., treating physician*

Dr. Lui began treating Ms. Romo in July 2011.  Tr. 595.  In January 2012, he opined that Ms. Romo "cannot focus on task with neck pain and shortness of breath."  Tr. 640.  He opined that she could work and participate in activities related to preparing for and looking for work for "0 hours."  *Id.*  Dr. Lui also opined that Ms. Romo was physically able to perform sedentary work, meaning that she was able "to lift 10 pounds maximum and frequently lift or carry such articles as files and small tools," and sit, walk, and stand for brief periods.  Tr. 641.

1    The ALJ gave Dr. Lui's opinion little weight, finding that it was inconsistent with

2  "diagnostic images from February 2011," which "were unremarkable."  Tr. 19.  *See Tommasetti*

3  *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly

4  considered by ALJ in rejection of physician's opinions).  The February 2011 cervical MRI

5  showed "[m]ultilevel degenerative disc changes without significant canal or foraminal

6  narrowing," and the February 2011 cervical x-ray showed "[m]oderate degenerative disc disease

7  at C6-C7" with "[m]oderate disc height loss . . . with circumferential osteophytosis."  Tr. 631-32.

8  It is questionable whether these findings could be characterized as "unremarkable," but

9  regardless, the ALJ's reliance on the February 2011 images does not support his rejection of Dr.

10  Lui's opinion.  This is because Ms. Romo was in a motor vehicle accident in March 2011, and an

11  x-ray in July 2011 showed worsened C3 on C4 and C4 on C5 anterolisthesis.  Tr. 599.  The ALJ

12  did not consider these later findings, and therefore he erred in rejecting Dr. Lui's opinion based

13  on the February 2011 diagnostic images.[1]

14    The ALJ also gave Dr. Lui's opinion little weight because it was inconsistent with his

15  treatment notes.  Tr. 18-19.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ

16  may reject a doctor's opinion that is inconsistent with the doctor's treatment notes).  The ALJ

17  noted that on November 2, 2011, Dr. Lui found that Ms. Romo's lungs were clear, she had

18  normal gait and range of motion in her hips and knees, her cerebellar function was normal, and

19  she had intact motor strength and reflexes.  Tr. 18, 627.  The ALJ also noted that on December 9,

20  2011, Dr. Lui found that Ms. Romo's extremities were normal without any evidence of cyanosis

21

22

23

[1] The Commissioner cites additional objective evidence in the record in an attempt to salvage the ALJ's decision on this point.  The ALJ, however, cited specifically to the February 2011 diagnostic images and did not reference the additional evidence relied upon by the Commissioner.  As such, the Court declines to affirm the ALJ based on evidence and reasons not provided by the ALJ.  *See, e.g.*, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on evidence the ALJ did not discuss).

REPORT AND RECOMMENDATION - 5

1    or edema.  Tr. 705.

2           Ms. Romo argues the ALJ's rejection of Dr. Lui's opinion is not supported by substantial

3    evidence because the ALJ failed to acknowledge Dr. Lui's clinical findings that support his

4    opinion.  Specifically, Ms. Romo points to the numerous instances where Dr. Lui found she had

5    decreased range of motion in her cervical spine with palpable tenderness and spasm in her

6    supraspinatus, infraspinatus, trapezius, and levator scapulae bilaterally.  Tr. 598, 602, 608, 613-

7    14, 627, 705-06.  As Ms. Romo asserts, these clinical findings are not inconsistent with Dr. Lui's

8    opinion.  Indeed, they also support his opinion that Ms. Romo would be limited to sedentary

9    work, rather than light work, which involves lifting up to 20 pounds.  Ms. Romo thus establishes

10   that the ALJ erroneously rejected Dr. Lui's opinion regarding the limiting effects of her neck

11   pain.  *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (an ALJ "cannot reach a

12   conclusion first, and then attempt to justify it by ignoring competent evidence in the record that

13   suggests an opposite result").

14          Ms. Romo, however, does not address the ALJ's finding that Dr. Lui's opinion regarding

15   her shortness of breath was inconsistent with his treatment notes.  Accordingly, she does not

16   invalidate all of the reasons the ALJ provided for discounting Dr. Lui's opinion.  *See Molina v.*

17   *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (plaintiff bears burden of establishing harmful

18   error); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (court cannot

19   manufacture arguments for a party).  Nevertheless, as this matter is being remanded for further

20   proceedings based on other harmful errors, *see infra* §§ B.5, B.6, F, reconsideration of Dr. Lui's

21   opinion in light of all of the medical evidence is appropriate on remand.

22          **2.    Chang B. Shin, M.D., treating physician**

23          Dr. Shin treated Ms. Romo for several months following a motor vehicle accident in

April 2009.  At their last appointment in October 2009, he diagnosed Ms. Romo with cervical strain/sprain, mild multilevel degenerative changes worse at C6-C7 with mild to moderate spinal canal narrowing, intermittent cervicogenic headache, lumbar strain/sprain, mild broad right paracentral disk protrusion at L5-S1, and bilateral ankle pain.  Tr. 737.  He noted that her improvement had been minimal and therefore opined that her prognosis was guarded.  *Id.*  He stated it probably would take an additional 18 months to achieve maximum medical improvement and that treatment should include "serial lumbar epidural steroid injections, serial cervical epidural steroid injections, spinal adjustment, pain medications, and PT and a multidisciplinary approach . . . ."  *Id.*  The ALJ did not discuss Dr. Shin's October 2009 treatment note, or prior treatment notes.

Ms. Romo argues it was error for the ALJ to silently reject Dr. Shin's opinion that her prognosis was guarded and it would probably take another 18 months for her to achieve maximum medical improvement with a comprehensive treatment plan.  She maintains this evidence is significant because it is consistent with Dr. Lui's opinion and with her own testimony.  As the Commissioner asserts, however, the ALJ did not err in failing to specifically discuss and provide reasons for rejecting Dr. Shin's statements because he did not assess any functional limitations.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").

### 3.      Michael Chun, M.D., consulting physician

In November 2011, Dr. Chun provided a neurology consult at the request of Dr. Lui to evaluate Ms. Romo's chronic neck pain.  Tr. 616.  After his examination, he concluded:

> Difficult case.  I don't think she has any radicular symptoms and I think the
> EMG/MCV is unlikely to be helpful.  She surely does have degenerative changes
> in her neck by x-ray.  An MRI would confirm the same but I don't think she is a
> good candidate for surgery at this point, mainly because she doesn't have a classic
> radiculopathy.  I think physical therapy should be tried but she does not want to
> do that at this point. . . .  I think she is at high risk of developing a chronic pain
> syndrome although I think she's essentially there.  Her prognosis is poor. . . .

*Id.*  The ALJ did not mention Dr. Chun's November 2011 treatment note in his decision.

Ms. Romo argues the ALJ erred by failing discuss Dr. Chun's opinion that she had developed chronic pain syndrome and had a poor prognosis.  She asserts that Dr. Chun's evidence is consistent with Dr. Lui's opinion and her testimony.  But as with Dr. Shin, the ALJ did not err with respect to Dr. Chun because he did not assess any work-related limitations.  *See, e.g.*, *Turner*, 613 F.3d at 1223.  In addition, Dr. Chun did not diagnose Ms. Romo with chronic pain syndrome.  *See* Tr. 616 (diagnosing Ms. Romo with only "chronic neck pain").

### 4.    Brent Packer, M.D., non-examining physician

In December 2011, Dr. Packer reviewed the medical record and opined Ms. Romo was limited to sedentary work with additional postural limitations.  Tr. 98-100.  Dr. Packer also opined Ms. Romo would need to avoid moderate exposure to fumes, odors, dusts, and poor ventilation.  *Id.*  The ALJ gave Dr. Packer's opinion little weight because it was not consistent with Ms. Romo's physical examination findings and diagnostic images:  "For example, even though the claimant has multilevel degenerative disc disease, the claimant has only minimal to mild narrowing.  In addition, the claimant's physical examination findings with treating physician, Dr. Lui, are predominately within normal limits, with normal gait, station, muscles strength, and reflexes."  Tr. 18.  The ALJ also found Ms. Romo's "symptoms of asthma are treated and controlled with prescribed medications."  *Id.*

Without explanation, Ms. Romo asserts the ALJ's rejection of Dr. Packer's opinion as

REPORT AND RECOMMENDATION - 8

1   inconsistent with physical examination findings and diagnostic images "is not a specific and

2   legitimate reason."  Dkt. 16 at 10.  An ALJ, however, may reject an opinion that is inconsistent

3   with the medical record.  *See Tommasetti*, 533 F.3d at 1041.  Ms. Romo also contends the ALJ

4   erroneously concluded that Dr. Packer's opinion was inconsistent with Dr. Lui's findings and

5   erred in characterizing Dr. Lui's findings as "predominately within normal limits."  Tr. 18.  As

6   noted above with respect to Dr. Lui, the ALJ ignored objective findings that lend support to an

7   opinion that Ms. Romo is limited to sedentary work due to the lifting limitations.  Because this

8   matter is being remanded for further proceedings, *see infra* § F, the ALJ should reevaluate Dr.

9   Packer's opinion, taking into consideration all of the objective medical findings.

10          ***5.      Sharon Underwood, Ph.D., non-examining psychologist***

11          In December 2011, Dr. Underwood reviewed the record and opined Ms. Romo was

12   limited to simple repetitive tasks; capable of adequate concentration, persistence, and pace with

13   "intermittent disruption of anxiety and [side effects] of narcotic use and any other recreational

14   drugs she may be using"; required a work setting that involved limited public interaction; and

15   would have some difficulty responding to changes in a work setting but could still persist.  Tr.

16   100-02.  The ALJ gave Dr. Underwood's opinion significant weight.  Tr. 18.

17          Ms. Romo argues the ALJ erred in relying on Dr. Underwood's opinion because the

18   psychologist based her opinion, in part, on an April 14, 2011 evaluation by Steven Johansen,

19   Ph.D., which is missing from the record.  *See* Tr. 110.  The Court agrees.  An ALJ "must base

20   the decision on the preponderance of the evidence offered at the hearing or otherwise included in

21   the record."  20 C.F.R. § 404.953(a); *see also* 42 U.S.C. § 405(b)(1) (Commissioner shall make

22   her determination "on the basis of evidence adduced at the hearing").  Dr. Underwood gave great

23   weight to Dr. Johansen's extra-record opinion.  Tr. 110.  Because the ALJ adopted Dr.

1   Underwood's opinion, the ALJ's decision relies on extra-record evidence.  This violates the

2   Social Security Act, the Social Security regulations, and due process.  *See Yang v. Shalala*, 22

3   F.3d 213, 217 (9th Cir. 1994).

4          The Commissioner nevertheless argues that there is no error because Dr. Underwood

5   adopted the opinion of the single decision maker, who reviewed and relied on other medical

6   records.  *See* Tr. 68-72.  But, like Dr. Underwood, the single decision maker also relied on Dr.

7   Johansen's opinion.  Tr. 70.  Thus Dr. Underwood's reliance on the single decision maker does

8   not negate the error.  The Commissioner also asserts that any error was harmless because other

9   medical evidence in the record supports Dr. Underwood's opinion.  Yet even if this is the case, it

10  would be improper for the Court to speculate that Dr. Underwood's opinion would be the same

11  without reliance on Dr. Johansen's opinion.  *See* SSR 86-8p ("Reasonable inferences may be

12  drawn, but presumptions, speculations and suppositions should not be substituted for

13  evidence.").  As such, the Court concludes the ALJ committed harmful error in adopting Dr.

14  Underwood's opinion, which relied on the extra-record opinion of Dr. Johansen.

15              *6.      Jessie Enell, ARNP, treating mental health provider*

16         Mr. Enell began treating Ms. Romo in December 2011.  Tr. 687.  In February 2012, he

17  diagnosed her with major depressive disorder and post traumatic stress disorder ("PTSD").  Tr.

18  637.  He opined that these conditions limited Ms. Romo's "ability to work around others, follow

19  tasks, and complete projects."  *Id.*  Mr. Enell also noted that Ms. Romo "reports memory

20  impairment that is evident upon interview."  *Id.*  Ultimately, Mr. Enell opined Ms. Romo could

21  work and participate in activities related to preparing for and looking for work for "0 hours."  *Id.*

22         The ALJ gave Mr. Enell's opinion little weight because it was inconsistent with Ms.

23  Romo's "routine treatment records."  Tr. 19.  In support of this conclusion, the ALJ summarized

1  one treatment note, which indicated normal findings on mental status examination and that Ms.

2  Romo "reported that she was doing 'OK' and that her prescribed medication of Wellbutrin was

3  working." *Id.* (citing Tr. 645).

4         An ALJ may reject an "other source" medical opinion, such as Mr. Enell's, by providing

5  germane reasons that are supported by substantial evidence. *See Smolen*, 80 F.3d at 1288-89.

6  Ms. Romo argues the ALJ erred because he failed to acknowledge mental health treatment notes

7  that support Mr. Enell's opinion. *See* Tr. 426-43, 448, 466, 472, 674, 648.  Indeed, the ALJ's

8  conclusion that Ms. Romo's treatment records were "routine" is not supported by substantial

9  evidence.  Rather, the records show varying levels of functionality.  For example, in January

10 2011, a mental status examination showed Ms. Romo had a flat, blunted affect, was depressed,

11 had limited recent and remote memory, and was distractible and withdrawn.  Tr. 472.  In January

12 2012, mental status examinations showed she was depressed, tearful, nervous, agitated, and

13 labile.  Tr. 674, 678.  In February 2012, Ms. Romo was distressed, anxious, depressed,

14 inattentive, and distractible.  Tr. 671.  She had pressured speech and impaired short term

15 memory.  *Id.*  In March 2012, Ms. Romo was anxious and depressed with variable attention.  Tr.

16 659.  The following month she was anxious, depressed, and reported impaired memory.  Tr. 655.

17 And in June 2012, she was confused and had scattered thoughts.  Tr. 648.  Although it is an

18 ALJ's prerogative to resolve conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, an

19 ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent

20 evidence in the record that suggests an opposite result," *Gallant*, 753 F.2d at 1455-56.  Because

21 the ALJ here ignored conflicting evidence instead of resolving the conflict, his rejection of Mr.

22 Enell's opinion is not supported by substantial evidence.  Similarly, because the ALJ did not

23 resolve the conflicting evidence, the Commissioner's argument that the ALJ reasonably

REPORT AND RECOMMENDATION - 11

interpreted the evidence is not persuasive.

### 7.   Other arguments

Ms. Romo argues the ALJ failed to properly evaluate the other medical evidence in the record.  She provides an extensive summary of her treatment records and argues that the Court "should find that the ALJ erred by failing to acknowledge that the medical evidence of record, considered in its entirety, supports Romo's testimony about her limitations, and shows that Romo has been unable to perform any type of full-time work activity on a sustained basis."  Dkt. 16 at 14.  This conclusory argument, however, fails to establish any specific error—much less a harmful error—that the Court has not already considered.

Ms. Romo raises two additional arguments.  First, she asserts, "The ALJ also erred by failing to fully and fairly develop the record by obtaining a psychological consultative evaluation of Romo in order to better document the extent of her mental functional limitations."  Dkt. 16 at 8.  Second, she contends the ALJ erred at step two by failing to find that asthma, migraine headaches, and PTSD are severe impairments.  Both of these arguments are conclusory and undeveloped.  In addition, Ms. Romo did not raise them as issues on the first page of her opening brief.  Thus the Court will disregard them.  *See* Dkt. 13 at 1-2 (scheduling order); *Indep. Towers of Wash.*, 350 F.3d at 929 (declining to address assertions unaccompanied by legal arguments because the court "require[s] contentions to be accompanied by reasons").

## C.   Lay witness evidence

The record contains the statement of Social Security interviewer L. Fry, a lay witness, who noted:

> Claimant was very weepy and very sad through the whole
> interview.  Almost went through a box of tissues.  She was trying
> to concentrate, but could not and kept apologizing that she could
> not remember.  She cried when talking about the accidents and

REPORT AND RECOMMENDATION - 12

being afraid to sit on the freeway or when driving.  She cried when
talking about the frustration of not being heard by the Everett
Clinic when she felt she needed referrals or other doctors and when
she talked about her son leaving for the navy soon.  Very fidgety
and shifted in her chair a lot.

Tr. 212.  The ALJ did not discuss this statement.  As Ms. Romo argues, this was error.  *See Van*

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to a claimant's

symptoms or how an impairment affects ability to work is competent evidence and cannot be

disregarded without comment).  The Commissioner maintains that the error was harmless

because L. Fry's statement mirrored Ms. Romo's testimony, which the ALJ properly discounted.

*See Molina*, 674 F.3d at 1117-22 ("[w]here lay witness testimony does not describe any

limitations not already described by the claimant, and the ALJ's well-supported reasons for

rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to

address the lay testimony may be deemed harmless).  Even if the ALJ's error was harmless,

however, the ALJ on remand should consider and discuss L. Fry's statement as required by the

Social Security regulations.

**D.      RFC determination and step-five finding**

Ms. Romo contends the ALJ erred in determining her RFC and in basing his step-five

finding on an erroneous RFC determination.  Ms. Romo's arguments on these issues restate the

arguments she made with respect to credibility, medical evidence, and lay witness evidence.  As

the Court has already considered these issues, it need not address them again here.

**E.      New evidence**

Ms. Romo submitted new evidence to the Appeals Council after the ALJ rendered his

decision.  *See* Tr. 774-930.[2]  Because the Court recommends that this matter be remanded for

---

[2] Some of this evidence is duplicates of evidence already in the record.

1  further administrative proceedings, *see infra* § F, the ALJ in the first instance should consider

2  this new evidence.

3  **F.     Remedy**

4          Without developing the argument, Ms. Romo contends the Court should remand for an

5  award of benefits.  The Court has discretion to remand for further proceedings or to award

6  benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Three elements must be

7  satisfied for a court to remand for an award of benefits:

8          (1) the record has been fully developed and further administrative proceedings
         would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
9        reasons for rejecting evidence, whether claimant testimony or medical opinion;
         and (3) if the improperly discredited evidence were credited as true, the ALJ
10       would be required to find the claimant disabled on remand.

11  *Garrison v. Colvin*, 759 F.3d 995, at 1020 (9th Cir. 2014).  The third requirement "incorporates

12  what we have sometimes described as a distinct requirement of the credit-as-true rule, namely

13  that there are no outstanding issues that must be resolved before a determination of disability can

14  be made."  *Id.* at 1020 n.26.  If all three requirements are satisfied, the Court must remand for an

15  award of benefits unless "the record as a whole creates serious doubt that the claimant is, in fact,

16  disabled . . . ."  *Id.*  Here, further proceedings are necessary to develop the evidentiary basis for

17  Dr. Underwood's opinion or to obtain a new opinion based on the record before the ALJ.

18  Accordingly, this matter should be remanded for further proceedings.

19                                          **CONCLUSION**

20          For the foregoing reasons, the Court recommends that the Commissioner's decision be

21  **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to

22  sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should further develop the record as

23  necessary; consider the record in its entirety, including the evidence submitted to the Appeals

Council; reevaluate the opinions of Dr. Lui, Dr. Packer, Dr. Underwood, Mr. Enell, and L. Fry; revise Ms. Romo's RFC, as necessary; and proceed with steps four and five of the sequential evaluation process.  In addition, if the ALJ deems it appropriate based on the new evidence in the record, he may revisit his step two and step three findings.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **December 18, 2014**.  If no objections are filed, the matter will be ready for the Court's consideration on **December 19, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 4th day of December, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15